## In re COLUMBIA REAL-ESTATE CO.

### (District Court, D. Indiana. June 1, 1900.)

### No. 534.

**1. BANKRUPTCY—VACATING ADJUDICATION—WHO MAY APPLY.**
A petition to set aside an adjudication of bankruptcy duly made by the district court in an involuntary proceeding, being in the nature of a bill to review and vacate a judgment, can be maintained only by the bankrupt, or by a creditor of the bankrupt owning a provable debt or claim against him.

**2. SAME.**
Where a person holding the naked legal title to land, which was actually the property of the bankrupt corporation, made an agreement, as accommodation indorser or surety for another, to pledge or mortgage the property as security for the debt of his principal, this does not give the creditor a lien upon the property of the bankrupt, nor any claim or demand provable against it, in such sense as to entitle him to maintain a petition to set aside the adjudication of bankruptcy.

**3. SAME—WANT OF JURISDICTION.**
Where a petition is filed to set aside an adjudication of bankruptcy, on the ground of want of jurisdiction in the court to make it, although the petitioner may be a stranger to the proceedings, and therefore not entitled to be heard as of right, it is in the discretion of the court to allow him to be heard as amicus curiæ; want of jurisdiction being a question which the court should consider whenever and however raised.

**4. SAME—PRESUMPTION OF JURISDICTION.**
A district court of the United States, as a court of bankruptcy, is a court of record, and, although its jurisdiction is limited, it is not an inferior court in such a sense that all facts essential to its jurisdiction must affirmatively appear on the face of its record in order to sustain its judgments.

**5. SAME—COLLATERAL ATTACK.**
A decree of the district court, sitting in bankruptcy, reciting that "upon due consideration had" the respondent corporation "is adjudged a bankrupt, within the true intent and meaning of the acts of congress relating to bankruptcy," cannot be impeached collaterally, as for a want of jurisdiction, merely because the petition omitted to allege that the corporation belonged to one of the classes made subject to be adjudicated bankrupt in involuntary proceedings.

**6. SAME—WAIVER OF PROCESS AND TIME TO PLEAD.**
Where a petition in involuntary bankruptcy was filed against a corporation, and on the same day the defendant waived process, entered its appearance, and admitted the allegations of the petition to be true, and an adjudication of bankruptcy was made forthwith, such adjudication will not be set aside by the court of bankruptcy as void for want of jurisdiction, on the application of a stranger, when neither the bankrupt nor any of its creditors object to the decree.

**7. SAME—AUTHORITY OF OFFICER OF CORPORATION.**

Where the answer filed by a corporation to a petition in involuntary bankruptcy against it, in which it waives process, admits the allegations of the petition, and declares its willingness to be adjudged bankrupt, is signed in the name of the corporation by its president, an objection that no proper corporate action is shown investing that officer with authority to act for the corporation in that behalf is waived by the acquiescence of the bankrupt and its creditors in the adjudication, and, as against strangers, is concluded by the adjudication.

In Bankruptcy. On demurrer to petition of Spang, Chalfant & Co. to vacate and annul an adjudication in bankruptcy.

Wilson & Quinn and Wilson & Townley, for petitioners.

Haywood & Burnett and Stuart, Hammond & Sims, for respondents.

BAKER, District Judge. On April 27, 1900, Spang, Chalfant & Co., a corporation of Pennsylvania, by leave of court filed its petition in the above-entitled cause, alleging that on the 2d day of March, 1900, the Columbia Real-Estate Company was adjudged a bankrupt on a creditors' petition in involuntary bankruptcy, and on the answer of the defendant waiving process, entering appearance, and admitting the allegations of the petition to be true. The petition and answer were filed, and adjudication of bankruptcy entered on the same day. Spang, Chalfant & Co., claiming to be a creditor of said Columbia Real-Estate Company, petitions the court to vacate and annul the adjudication— First. Because said corporation was not engaged "principally in manufacturing, trading, printing, publishing, or any mercantile pursuits," within the meaning of the bankrupt law. Second. That while said corporation was organized under the law of Indiana, "for the purpose of buying, holding, and selling real estate," its real purpose was to acquire, own, operate, and lease a large tenement building or flat in the city of Lafayette; that it did so acquire, own, and operate said building until a misunderstanding occurred among the stockholders, when one of them, namely, Oscar P. Benjamin, acquired and became the owner of all the stock of said company except one share, which said Benjamin gave to some person for the purpose of qualifying him to act as an officer; that after the acquisition of said stock by said Benjamin the corporation became embarrassed, and, determining to quit business, exchanged said tenement or flat for other property, and said corporation did not engage further in the real-estate business. Third. Because there was no directors' or stockholders' meeting of said Columbia Real-Estate Company for the purpose of assenting to said adjudication in bankruptcy; that said stockholders and directors never consented to the same, nor did they ever admit in writing their willingness to have said company adjudged a bankrupt, nor was there any evidence heard by the court concerning the insolvency of said corporation, or its willingness to be adjudged a bankrupt. Fourth. Because said creditors' petition does not allege that said Columbia Real-Estate Company was ever engaged principally in any manufacturing, trading, printing, publishing, or mercantile pursuits. The petition of Spang, Chalfant & Co. further alleges that it is interested in the matter of said adjudication, and claims to be a creditor of said Col-

umbia Real-Estate Company by virtue of its claim to have a lien on certain real estate which it is advised is owned by said bankrupt, the legal title thereto being in O. P. Benjamin, which claim grows out of the following facts: That on September 19, 1899, the O. P. Benjamin Manufacturing Company, a corporation of which O. P. Benjamin was president and principal stockholder, being indebted to Spang, Chalfant & Co. for goods, wares, and merchandise theretofore sold in the sum of $2,621.52, said last-named company demanded payment. Thereupon said Benjamin, for himself and the O. P. Benjamin Manufacturing Company, requested an extension, which was granted upon the terms of the following written agreement:

"Lafayette, Ind., September 19, 1899.

"It is hereby agreed between Spang, Chalfant & Co., party of the first part, and O. P. Benjamin, of Lafayette, Ind., party of the second part, that the party of the first part is to accept a note for twenty-six hundred twenty-one $^{52}/_{100}$ dollars. at thirty days. from the O. P. Benjamin Mfg. Co., indorsed by O. P. Benjamin. the same being in full of their claim. The party of the second part agrees that, if the said note is not paid at maturity, he will give the party of the first part a mortgage on his property.

"[Signed]                         Spang, Chalfant & Co.,
                                       "By Edw. W. Wright.
"[Signed]                         O. P. Benjamin."

That thereafter, about November 29 or December 1, 1899, pursuant to said agreement, and upon failure of the makers of said note to pay the same. one Charles W. Bone, representing himself as agent of the said Benjamin and the said Benjamin Manufacturing Company, went to petitioner's business house in Pittsburg, and offered to deliver to said Spang, Chalfant & Co. a mortgage covering the individual property of O. P. Benjamin. That said mortgage, being defective, was not accepted by said Spang, Chalfant & Co. Thereupon, Bone representing that he had authority in the premises, the following agreement in writing was executed:

"This agreement made this first day of December, 1899, between Spang, Chalfant & Co., of Allegheny county, Pennsylvania, parties of the first part, and the O. P. Benjamin Mfg. Co., by Charles W. Bone, their agent, of Tippecanoe county, Indiana. parties of the second part, witnesseth: That whereas, the said Spang. Chalfant & Co. have this day purchased from O. P. Benjamin lots numbers 110, 111, 112. 122, 123, 175, 176, 188. 190, 191, 192, 194, 195, 196, 218, 251, 252, 254, 255, 256, 258, 259, 260, 262, 263, 264, 266, 267, 268, 270, 271. 272, 275, 276, 320, 322, 323, 324, 326, 327, 328, 331, 332, 339, 342, 343, 344, 346. 347. 348. 349, 354, 392, 393, 394, 395, 396. 397, 398, 400, 403, 405, 404, 406, 407, 408, 409, 410. 411, 412, 413, 414, 415, 416. 417, 419, 420, 421, 464, 465, 466, 467, 468, 469, 470, 471, 472. 473, 474, & 475 in the Phillips Land & Gas Co.'s First addition to the city of Alexandria, Madison county, Indiana, and the same is to be duly conveyed to Henry Chalfant, trustee, by warranty deed: Now. it is agreed that if the said O. P. Benjamin Mfg. Co. shall pay to the said Spang. Chalfant & Co., within the period of five and one-half months next ensuing, the sum of $2,652.98, evidenced by five notes, to be paid as follows, to wit: $500.00, January 1. 1900; $500.00, February 15, 1900; $500.00, March 15, 1900; $500.00, April 15, 1900; & $652.98, May 15, 1900,—all payable to the order of Spang. Chalfant & Co.. with interest thereon at the rate of 6% per annum,—the said Spang. Chalfant & Co. agree that they will cause the said Henry Chalfant, trustee, to resell and reconvey the said real estate above described to the said O. P. Benjamin, upon receipt of the sums of money named herein, and that they will not incumber the above-described real estate during

the period of five and one-half months next ensuing. If the said notes named herein or any of them are not paid when due, then all are to become due and payable. This agreement is enforceable without relief from valuation or appraisement laws.

"Witness our hands and seals December 1st, 1899.

"Spang, Chalfant & Co.,
"[Signed]                                        Edward W. Wright.
"O. P. Benjamin Mfg. Co. and O. P. Benjamin,
"[Signed]                                        By Charles W. Bone, Agent.
"Witnesses:    Ralph A. Heiber.
"Hugh B. Morrow.
"Executed in Duplicate."

It is further alleged that, pursuant to said agreement, the five notes therein described were executed by the O. P. Benjamin Manufacturing Company and O. P. Benjamin, payable to the latter, and were by him indorsed to Spang, Chalfant & Co., and the 30-day note for $2,621.52 was thereupon surrendered by the said Spang, Chalfant & Co. to the said O. P. Benjamin Manufacturing Company, but that the deed of trust mentioned in said agreement of December 1, 1899, was never executed,—Benjamin, on December 2, 1899, and thereafter, writing letters to Spang, Chalfant & Co. offering various excuses therefor; that the first note for $500 has been paid, but all the balance of said notes are unpaid. The petitioner further alleges that since the adjudication of bankruptcy herein it has been informed that the real estate described in the agreement of December 1, 1899, is owned by the bankrupt, the Columbia Real-Estate Company, having been acquired in exchange for the flat building heretofore described, but that the title thereto was taken in the individual name of O. P. Benjamin, and such was the fact at the dates of the two agreements of September 19 and December 1, 1899, and that the creditors of said Columbia Real-Estate Company are about to cause proceedings to be instituted to recover said real estate in behalf of the bankrupt's estate; that petitioner had no notice or knowledge of the facts last above recited; that it understood and believed that the real estate described in the agreement of December 1, 1899, was the individual property of Oscar P. Benjamin, and not otherwise, and that it made the agreements and did the acts described in good faith, and in reliance upon the ownership of said Benjamin as aforesaid. Prayer, that said adjudication of bankruptcy be vacated because made without jurisdiction, and for all proper relief.

The petitioning creditors have interposed a demurrer to this petition upon the following grounds: (1) The facts stated are insufficient to entitle the petitioner to the discovery and relief sought and prayed; (2) the intervening petitioner has not shown any claim, or right, title, or interest, against the bankrupt, or in, to, or against its estate; (3) the petitioner has an adequate remedy at law; (4) the petition is without equity; (5) that the statements and allegations of said petition do not invoke the jurisdiction of the court to hear and determine the matters therein set forth and alleged.

The petitioner's right to maintain the present proceeding, which is a bill or petition to review and set aside the judgment of this court, wherein the Columbia Real-Estate Company was adjudged a bankrupt,

depends upon its interest in the subject-matter of that proceeding. The bankruptcy act provides that, "upon the filing of a petition for involuntary bankruptcy, service thereof, with a writ of subpœna, shall be made upon the person therein named as defendant," etc. Section 18, cl. "a." It further provides that "the bankrupt, or any creditor, may appear and plead to the petition within ten days after the return day, or within such further time as the court may allow." Id. cl. "b." A "creditor," as defined in the bankrupt act, is "any one who owns a demand or claim provable in bankruptcy, and may include his duly-authorized agent, attorney or proxy." Section 1, cl. "9." The Columbia Real-Estate Company was the only party upon whom service of process was required to be made, and it and its creditors were the only parties authorized to make defense. They alone were interested in that proceeding. None others were, or could become, parties thereto. The term "parties" includes all persons who are directly interested in the subject-matter in issue, who have a right to make defense, control the proceedings, or appeal from the judgment. Strangers are persons who do not possess these rights. Therefore, unless the petitioner is a creditor of the bankrupt corporation owning a provable claim or demand against it, it is a stranger to the proceeding which it seeks to have reviewed and set aside. A stranger cannot maintain a bill of review, or one in the nature of a bill of review. If, upon the face of the record, a judgment is shown to have been rendered without jurisdiction of the subject-matter or the parties, it will be treated as a nullity whenever and however drawn in question. A stranger, however, cannot maintain a bill or petition to review or set aside a void judgment or decree to which he is a stranger.

It is contended that the petitioner, "having a mortgage upon property belonging to the bankrupt, is therefore a creditor of the bankrupt's estate." But the petition states no facts showing that the petitioner has any mortgage or lien on any property belonging to the bankrupt corporation, or any demand or claim provable in bankruptcy against the estate under administration. By the agreement of September 19, 1899, Benjamin individually engaged to become surety for the debt of the O. P. Benjamin Manufacturing Company to the petitioner, and to the extent only of giving a mortgage on his property. The written undertaking of December 1, 1899, though signed by the petitioner, the O. P. Benjamin Manufacturing Company, and O. P. Benjamin, is by its terms a contract wholly between the first two parties, and its recital of the purchase from Benjamin of the real estate named evidently refers to a contemporaneous parol agreement between Bone, as agent for Benjamin, and the petitioner, which is not disclosed in the petition. Conceding, however, that there was such an agreement or conveyance, there is no pretense that Benjamin, or Bone, his agent, represented or had authority to bind the Columbia Real-Estate Company. It is admitted that the real estate described in the agreement of December 1, 1899, is the property of the bankrupt corporation; and although it is alleged that the title is now, and was on September 19, 1899, in Benjamin individually, his want of power to bind the Columbia Real-Estate Company as an accommodation surety by a pledge or mortgage of the bankrupt's property, of which he held

only the naked, legal title as trustee, is plainly manifest. "In all cases a bill must show that a defendant is in some way liable to the plaintiff's demand, or that he has some interest in the subject of the suit; otherwise, it will be liable to demurrer." 1 Daniell, Ch. Prac. 372. "The plaintiffs in a suit must not only show an interest in the subject-matter, but it must be an actual, existing interest; a mere possibility, or even probability, of a future title will not be sufficient to sustain a bill." Id. 362. . As the petitioner fails to state facts showing that the bankrupt's estate is in any way liable to it for any debt, claim, or demand provable in the bankruptcy proceeding, it follows that it is not a creditor, that it has no interest in the bankruptcy proceeding, and is a stranger thereto.

Counsel for the petitioner contend that the adjudication is void for want of jurisdiction. Having decided that the petitioner is not a creditor, and that it has no interest in the subject-matter in issue in the bankruptcy proceeding, it is plain that it has no right to be heard as a matter of right, on its petition to review and set aside the adjudication. The court, however, has ex gratia heard counsel upon this question as amicus curiæ. As was said by Gray, C. J., in Martin v. Tapley, 119 Mass. 116, 120:

"An amicus curiæ is heard only by the leave and for the assistance of the court, and upon a case already before it. He has no control over the suit, and no right to institute any proceeding therein, or to bring the case from one court to another * * * by exceptions, appeal, or writ of error. Y. B. 4 Hen. VI. p. 16, pl. 16; In re Isley, 1 Leon. 187; Vin. Abr. tit. 'Amicus Curiæ'; Knight v. Low, 15 Ind. 374."

Want of jurisdiction is a question that the court should consider whenever or however raised, even if the parties forbear to make it or consent that the case may be considered on its merits. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543. If, as insisted by counsel, the bankruptcy court is in a technical sense a court of inferior and limited jurisdiction, every fact essential to its jurisdiction must affirmatively appear on the face of its record. It is true the bankruptcy court is one of limited jurisdiction, and the constitution describes all courts of the United States, except the supreme court, as inferior courts. But the circuit and district courts of the United States as courts of bankruptcy are courts of record, and as such they are not inferior courts in the sense that jurisdiction must necessarily appear upon the face of the record. Hays v. Ford, 55 Ind. 52; Bank v. Judson, 8 N. Y. 254; Skillern's Ex'rs v. May's Ex'rs, 6 Cranch, 267, 2 L. Ed. 574; Ex parte Watkins, 3 Pet. 193, 7 L. Ed. 650; McCormick v. Sullivant, 10 Wheat. 192, 199, 6 L. Ed. 300; Kennedy v. Bank, 8 How. 586, 12 L. Ed. 1209.

The essentials of a valid judgment are jurisdiction of the parties and of the subject-matter. The latter is conferred by law; the former by service of process, or in some other manner authorized by law, as by the voluntary appearance of the party during the progress of the proceedings. It is insisted that this court had no jurisdiction over the subject-matter, because the petition failed to allege that the Columbia Real-Estate Company is a corporation "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits," and

because the adjudication was had within 15 days after the petition was filed upon the voluntary appearance and confession of the bankrupt, without service of process upon it. It is not necessary to decide whether the creditors' petition is insufficient upon demurrer, or whether it is vulnerable to a direct attack on appeal or otherwise. The question is whether the adjudication of bankruptcy is an absolute nullity for the reasons stated. The power conferred upon the bankruptcy court as a court of record to adjudge a natural person or a corporation a bankrupt necessarily includes the power to determine whether the person or corporation is of the class specified in the act. The creditors' petition in this case follows form 3 of the forms in bankruptcy promulgated by the supreme court (18 Sup. Ct. xix.), and contains every essential averment required by that form. The adjudication recites that the petition of Henry A. Taylor and others "that the Columbia Real-Estate Company, a corporation, be adjudged a bankrupt within the true intent and meaning of the acts of congress relating to bankruptcy, having been heard and duly considered, the said Columbia Real-Estate Company is hereby declared and adjudged bankrupt accordingly." The presumption which attaches to all judgments of courts of record, as well as the direct finding that, upon due consideration had, the Columbia Real-Estate Company is adjudged a bankrupt "within the true intent and meaning of the acts of congress relating to bankruptcy," concludes all collateral inquiry as to whether or not the corporation was of a class subject to be adjudicated a bankrupt. It will be presumed that the court heard and determined that question, and it was not necessary to set out upon the face of the record the facts or the evidence upon which its conclusion was reached. "Courts of record, having authority over the subject-matter, are competent to decide upon their own jurisdiction, and to exercise it to final judgment, without setting forth upon their records the facts and evidence upon which their decision is based. Their records are absolute verities, not to be impugned by averment or proof to the contrary." Freem. Judgm. § 122; Grignon's Lessee v. Astor, 2 How. 319, 11 L. Ed. 283; Voorhees v. Bank, 10 Pet. 449, 9 L. Ed. 490; Bowsse v. Cannington, Cro. Jac. 244. In Voorhees v. Bank, supra, it was said: "Every matter adjudicated becomes a part of their record, which thenceforth proves itself, without referring to the evidence on which it has been adjudged."

Nor can there be want of jurisdiction over the subject-matter because the adjudication was had on the same day that the petition and answer were filed. There is nothing in section 18 of the bankruptcy act which precludes a waiver of process, a voluntary appearance of the bankrupt, and an answer admitting bankruptcy on the day the petition is filed. An adjudication on a voluntary appearance and an answer admitting the averments of the petition would certainly conclude the bankrupt who entered the appearance and filed the answer. It may be when an adjudication has been made without service of process, and before the expiration of 15 days, that the creditors might, upon seasonable application, procure an order vacating the adjudication so far as to allow them to plead and be heard in opposition to the petition. But such right must be exercised with reasonable prompt-

ness after actual or constructive notice of the adjudication. In the present case neither the bankrupt nor any creditor is objecting to the adjudication. Their acquiescence shows that they are content.

It is next insisted that there is no jurisdiction over the corporation because the admission of its willingness to be adjudged a bankrupt, and the appearance and answer are signed, "Columbia Real-Estate Company, by O. P. Benjamin, Prest.," without any showing of proper corporate action investing the president with authority to represent the corporation in that behalf. This is a matter which, if not waived by acquiescence, is concluded by the adjudication.

In Bank v. Dandridge, 10 Wheat. 64, 70, 6 L. Ed. 554, Mr. Justice Story, speaking for the court, said:

"If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed."

The bankruptcy act provides for an appeal within 10 days from the adjudication; and the corporation and its creditors, being proper parties, could move the court to vacate the adjudication for the reason stated. The failure of the bankrupt, and of all of its creditors, to question the appearance and answer admitting the allegations of the petition, made on its behalf by its president, must be regarded as having the effect of ratifying his act, if it was done without precedent authority. As to this question, also, the presumption flows from the adjudication that the court considered and determined whether Benjamin had rightful authority to bind the corporation, and whether the acts done by him were sufficient for that purpose; and this conclusion being reached by the court, as recited in its judgment, after a hearing and due consideration, and it being a matter which by law it was authorized to hear and determine, even if its judgment was erroneous, it cannot be held to be absolutely null and void. In Cornett v. Williams, 20 Wall. 226, 249, 22 L. Ed. 259, the court say:

"The settled rule of law is that, jurisdiction having attached to the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud. Every intendment is made to support the proceeding. It is regarded as if it were regular in all things, and irreversible for error."

The court is of opinion that it acquired jurisdiction of the parties and of the subject-matter. The demurrer must be sustained, and it is so ordered.